

Seattle - New York
www.afnlegal.com

October 25, 2020

Honorable Mary Kay Vyskocil U.S.D.J
United States District Court for the Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

**Re:**   *An v. GTV Media Group Inc. et al.* **1:20-cv-06555-MKV - Application For Pre-Motion Conference re: Motion to Dismiss Counterclaims and to Strike Affirmative Defense**

Dear Judge Vyskocil:

Evading criminal charges in China, Defendant Wengui Guo ("Guo") sought asylum in the U.S. in 2014. Ex. A. Formerly close to the Chinese Communist Party ("CCP"), Guo recast himself as its pitiless critic upon arriving in America, using frequent livestreams lambasting the CCP and purporting to air its dirty laundry. *Id.* at 3. With the Chinese government seeking extradition and his asylum pending, Guo has consistently capitalized on anti-CCP sentiments in the U.S. to ingratiate himself with those in power, including by enamoring himself to former White House Political Advisor Steve Bannon, who was arrested on Guo's yacht. Ex. B.

Charismatic and media-savvy, Guo's livestreams have built up a large social-media fanbase, who frequently respond to his calls to action—including by gathering to protest at the homes of his critics. *Id.* No stranger to controversy, Guo is also embroiled in numerous lawsuits throughout the country and has repeatedly sued to silence his detractors. *See e.g.* Exs. C-D. In his many public broadsides against his perceived enemies, Guo has favored one attack above all others: accuse them of being agents, stooges, or secret proxies of the CCP. Ex. E.[1]

These tactics, while popular with Guo's fanbase, have generated little success in court. One of Guo's defamation actions resulted in sanctions, which is currently being enforced in this district. Ex. C. Guo is also running low on money. Just last month, a New York state court held Guo liable under a $30 million personal guarantee after finding his testimony to be "inconsistent". Ex. F. On October 15, 2020, Justice Ostrager also barred Guo from transferring assets after the LLC that holds his Sherry-Netherlands Hotel penthouse declared bankruptcy. Ex. G.[2]

---

[1] *See also Baiqiao Tang v. Wengui Guo*, 2019 U.S. Dist. LEXIS 201807, at *15 (S.D.N.Y. Nov. 20, 2019) ("[Guo's] assertions that Plaintiffs are secret agents of the Chinese government, rapists, or thieves, are statements that may be proven false")

[2] Guo testified under oath on January 23, 2019, in a case in the Eastern District of Virginia that his net worth was "negative," that he didn't "have any more money," that he does not "[i]n reality, under the law" "own any assets in the United States," that he has no "income from any sources," and that he has "not a penny left." *See* Ex. H, at 100:2–101:12. The CEO of the Sherry-Netherland Hotel, where Guo has lived since 2014, also testified on April 9, 2019 that Guo had "defrauded" the hotel. Ex. I. On June 30, 2020, the hotel sued to evict Guo for unpaid rent and maintenance. Ex. J.



Seattle - New York
www.afnlegal.com

**Complex Disputes**

  With no source of income, Guo conceived GTV to profit from his fame as an anti-CCP agitator. Compl. ¶ 21. In mid-2019, he contracted Mr. An's software development company WA&HF LLC, to build GTV. *Id.* ¶ 22. Mr. An delivered the initial release in March 2020, and Guo, approving, immediately began soliciting investors. *Id.* ¶¶ 23-27. Mr. An, believing in his own product, invested $500,000 on May 12, 2020. *Id.* ¶¶ 36-38. As he wired his investment, Mr. An had no idea that Guo and Saraca had no plans to pay the last installment for his development work. Ex. K (King County Superior Court Complaint) ¶¶ 16-18.

  With both the GTV product and Mr. An's money in hand, Guo resorted to his favorite weapon to self-extricate from his contractual obligations. Thus, a week after receiving Mr. An's investment, Guo broadcast a series of livestreams on May 19, May 21, May 23, May 25, May 30, June 6, and June 9, 2020, in which he accused Mr. An of being a communist agent—sent to sabotage GTV from the get-go. *Id.* ¶¶ 19-20. After receiving Mr. An's funds, GTV also did not execute a copy of the subscription agreement it now relies on to counterclaim. After repeated inquires yielded no response, Mr. An sued for breach of contract and defamation in the King County Superior Court in Seattle (where he resides). Ex. K. He simultaneously filed this suit to recover his $500,000 investment.

## I.  The Court Should Decline Jurisdiction Over GTV's Counterclaim

  GTV alleges jurisdiction under 28 U.S.C. 1367. Counterclaim ¶ 1. However, where a permissive counterclaim does not arise out of "the same common nucleus of operative fact," courts may decline to exercise jurisdiction. *See Absolute Activist Master Value Fund, Ltd. v. Ewing*, 2014 U.S. Dist. LEXIS 99612, at *14 (S.D.N.Y. July 11, 2014) ("*Ewing*") (internal quotations omitted). To make this determination, the Second Circuit has "traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Id.*

  In *Ewing*, the plaintiff brought federal securities law claims, and the defendant asserted state law breach of contract counterclaims. *Id.* *10-16. There, the court found no "substantial overlap" between the two sets of claims, and that as a result, the "difference in proof required" destroyed subject matter jurisdiction. *Id.* This case presents an exact parallel. Here, the "proof required" for Plaintiffs' securities law claims consists of Defendants' actions in soliciting investors, whereas the proof for GTV's counterclaim will center solely on Plaintiff's personal background. Indeed, the parties' communications will show that Mr. An repeatedly warned GTV of the risks of cyberattack and admonished GTV to prioritize security. Even disregarding the probative value of such warnings, they show that, far from having "substantial overlap", there is no overlap at all in the proof required for the two sets of claims.

  While this threshold failing is sufficient for dismissal, the first-filed Washington state court action supplies yet more reasons for the Court to decline jurisdiction. There, Mr. An alleged that Guo's "communist agent" accusations—which GTV is attempting to import into this case—is defamatory and a pretext to withhold contractual payment. Ex. K. And "plaintiff's choice of forum



Seattle - New York
www.afnlegal.com

is generally entitled to considerable weight." *Pence v. GEE Grp., Inc.*, 236 F. Supp. 3d 843, 855 (S.D.N.Y. 2017). Indeed, the very existence of the Washington action militates in favor of dismissal, as each of the *Colorado River* factors for federal abstention from a pending state-court dispute apply here. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In sum, because an already pending state court case will resolve the issues raised by the counterclaims, which have no factual overlap with the securities law claims before the court, the Court should decline supplemental jurisdiction over GTV's contract counterclaim.

## II. The Counterclaim Is Implausible On Its Face And Barred By the Securities Act and Washington Act's Anti-Waiver Provisions

In counterclaiming, GTV claims that Mr. An was a communist agent sent to sabotage GTV from inception. Counterclaim ¶¶ 7-8. It asks the Court to hold that Mr. An "forfeited" his GTV shares and order him to "take nothing" by his complaint. Counterclaim ¶¶ 6, 9, and at 13. But no one from GTV ever signed the subscription agreement—which explicitly states that it "may be accepted … on behalf of [GTV] by an *officer executing [it] and delivering a duplicate copy* to the Investor." Ex. L § 5. By failing to counter sign as required, GTV is the one that "forfeited" the agreement.

Even beyond this threshold defect, the counterclaim is simply implausible. Mr. An was **contracted** to build the GTV beta, did build it, handed over the source code to GTV, and **invested** $500,000 in it at Guo's urging. Compl. ¶¶ 22-38; Ex. K ¶¶ 9-18. Against this history, GTV's McCarthy-esque "red-baiting" is implausible on its face. Nor, indeed, has GTV pled any harm, as its only alleged "damage" theory is its "incurring of expenses, including reasonable attorneys' fees, by virtue of [Mr.] An's … breach of the Subscription Agreement." Counterclaim ¶ 12. Of course, the Second Circuit has squarely rejected this type of circular damages allegation. *See Zissu v. Bear*, 805 F.2d 75, 79 (2d Cir. 1986) ("The 'any and all damages' clause of the Subscription Agreement in this case did not meet the requisite level of specificity necessary to hold [plaintiff] liable to reimburse [defendants] for defense costs in their successful defense against [plaintiff's] securities claims.) The counterclaim is implausible and fail to allege standing through cognizable harm.

Finally, and equally dispositively, the Securities Act and Washington Act's anti-waiver provisions bar GTV's "forfeit[ure]" claim. *Kaiser-Frazer Corp. v. Otis & Co.*, 195 F.2d 838 (2d Cir. 1952) (where issuer violated the securities laws, anti-waiver provision may be construed to "brush aside ordinary contract principles of estoppel and waiver that might otherwise apply to contracts for securities."); *Gen. Life of Missouri Inv. Co. v. Shamburger*, 546 F.2d 774, 784 (8th Cir. 1976) ("the legislative purpose of protecting purchasers of securities would be frustrated if the subscription agreement were enforced in favor of … a violator of the Act."); *Can-Am Petroleum Co. v. Beck*, 331 F.2d 371, 373 (10th Cir. 1964) ("the remedial aspects of [the Securities Act] cannot be waived either directly or indirectly.") In short, issuing unregistered, non-exempt securities is a strict liability offense, and the remedy of rescission cannot be "forfeited." The Court should not countenance GTV's roundabout attempt to assert waiver of the Securities Act. Rather, the proper course for Defendants is to assert an affirmative defense to Mr. An's suit in Washington, in which Defendants Saraca (GTV's parent company) and Guo have appeared. Ex. M.



Respectfully Submitted

Dated: October 25, 2020

                                AFN LAW PLLC

By: _____

Angus F. Ni
41 Madison Ave, 31st Floor,
New York, NY 10010
Phone: (646) 453-7294
angus@afnlegal.com

*Attorney for Plaintiff Ruizheng An*