# EXHIBIT I

# *PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P. vs. KWOK HO WAN*

## *MICHAEL HORVITZ*
### *April 9, 2019*



**ELLEN GRAUER**
COURT REPORTING CO. LLC

126 East 56th Street, Fifth Floor  New York, New York 10022
P: 212-750-6434   F: 212-750-1097
www.ellengrauer.com

*Original File 267201.TXT*
Min-U-Script® with Word Index

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM        INDEX NO. 652077/2017
NYSCEF DOC. NO. 579                                      RECEIVED NYSCEF: 09/25/2020
Case 1:20-cv-06555-MKV   Document 30-9   Filed 10/25/20   Page 3 of 14

1

```
SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK
-------------------------------------------------------X
PACIFIC ALLIANCE ASIA OPPORTUNITY FUND L.P.,

                        Plaintiff,

KWOK HO WAN, a/k/a KWOK HO, a/k/a GWO WEN GUI,
a/k/a GUO WENGUI, a/k/a GUO WEN-GUI, a/k/a
WAN GUE HAOYUN, a/k/a MILES KWOK, a/k/a
HAOYUN GUO,

                        Defendant.

INDEX NO.: 652077/2017
-------------------------------------------------------X


                    1100 Superior Avenue East
                    Cleveland, Ohio

                    April 9, 2019
                    8:38 a.m.


        Videotaped examination of MICHAEL HORVITZ,
taken before me, the undersigned, Sarah R. Drown,
a Registered Professional Reporter and Notary
Public within and for the State of Ohio.




        ELLEN GRAUER COURT REPORTING CO., LLC
          126 East 56th Street, Fifth Floor
             New York, New York  10022
                  212-750-6434
                  REF:  267201
```

```
 1  A P P E A R A N C E S:

 2

 3  O'MELVENY & MYERS LLP

 4  Attorney for the Plaintiff

 5        TIMES SQUARE TOWER,

 6        7 TIMES SQUARE

 7        NEW YORK, NEW YORK  10036

 8  BY:   EDWARD MOSS, ESQ.

 9        SARA N. PAHLAVAN, ESQ.

10        STUART M. SARNOFF, ESQ.(Via videoconference)

11        GARO HOPLAMAZIAN, ESQ.(Via videoconference)

12        ELI GROSSMAN, ESQ.(Via videoconference)

13        PHONE:  212.326.2000

14        EMAIL:  Emoss@omm.com

15                Spahlavan@omm.com

16                Ssarnoff@omm.com

17                Ghoplamazian@omm.com

18                Egrossman@omm.com

19

20

21

22

23

24

25
```

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM    INDEX NO. 652077/2017
NYSCEF DOC. NO. 579                                  RECEIVED NYSCEF: 09/25/2020
Case 1:20-cv-06555-MKV   Document 30-9   Filed 10/25/20   Page 4 of 14

2

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM  INDEX NO. 652077/2017
NYSCEF DOC. NO. 579                               RECEIVED NYSCEF: 09/25/2020
Case 1:20-cv-06555-MKV   Document 30-9   Filed 10/25/20   Page 5 of 14

3

```
 1   A P P E A R A N C E S: (Cont'd)
 2
 3   HODGSON RUSS LLP
 4   Attorney for the Defendant
 5        605 THIRD AVENUE, SUITE 2300
 6        NEW YORK, NEW YORK  10158
 7   BY:  JILLIAN M. SEARLES, ESQ.
 8        MARK A. HARMON, ESQ. (Via phone)
 9        PHONE:  212.751.4300
10        EMAIL:  Jsearles@hodgsonruss.com
11                Mharmon@hodgsonruss.com
12
13
14   STROOCK & STROOCK & LAVAN LLP
15   Attorney for Michael Horvitz
16        180 MAIDEN LANE
17        NEW YORK, NEW YORK  10038
18   BY:  EVA C. TALEL, ESQ.(Via videoconference)
19        PHONE:  212.806.5400
20        EMAIL:  Etalel@stroock.com
21
22
23   ALSO PRESENT:
24        Ivan Bercian, Videographer
25
```

```
 1                MICHAEL HORVITZ
 2        form.
 3        A.    Well, I have a very low
 4   tolerance for people who have an
 5   inability to tell the truth, and if I had
 6   known that the representations being made
 7   were not true, my guess is that I would
 8   have not recommended approval of the
 9   purchase of the apartment.
10        Q.    Do you recall your testimony
11   earlier today that based on Mr. Kwok's
12   certification and representations that
13   you believe Beijing Zenith was an
14   operational company?
15        A.    Well, I didn't form a judgment
16   about what business it was in, whether it
17   had operations, whether it was a holding
18   company, what it was.  It was my belief
19   that it was a company owned and
20   controlled by Mr. Kwok.
21              I found the financials
22   difficult to understand, so I couldn't
23   make a judgment about that.  But I didn't
24   form an opinion of, you know, what
25   business it was in.
```

```
 1                  MICHAEL HORVITZ
 2      Q.    If I can direct your attention
 3  to page 79 of the testimony.  I'm going
 4  to start reading from line 23.  This
 5  testimony goes on to the next page.
 6            Question, "Mr. Kwok, did you
 7  know at the time this Beijing Zenith
 8  Holdings balance sheet was submitted to
 9  The Sherry-Netherland that Beijing Zenith
10  Holdings' assets had been frozen by the
11  Chinese government?"
12            "Object to the form of the
13  question."
14            Mr. Kwok refuses to answer and
15  then he's instructed that he can answer
16  this question.  He answers on line 9, "In
17  that case, I know.  Yes."
18            Do you see that?
19      A.    Yes.
20      Q.    What, if any, reaction sitting
21  here today do you have to this testimony,
22  Mr. Horvitz?
23      A.    Well, I -- I felt that the
24  Beijing Zenith financial statements
25  were -- there was something wrong with
```

```
 1                MICHAEL HORVITZ
 2   them when I first reviewed them.  So I
 3   had a skepticism about them, which is why
 4   I didn't recommend approval based on the
 5   Beijing Zenith Holdings' financial
 6   statements.
 7            So in this sense I guess I'm
 8   not surprised that -- that those
 9   statements were even more inaccurate than
10   I thought they were, but they certainly
11   confirm the idea that the statements were
12   not accurate.
13        Q.   Do you recall your testimony,
14   based on Mr. Kwok and his lawyers'
15   representations, that you believed he
16   owned 50 percent of Bravo Luck?
17        A.   Of Bravo Luck?  Yes.
18        Q.   If I can direct your attention
19   to page 82 of the testimony of Exhibit 8,
20   please.
21            I'm going to start at line 11.
22            "Thank you.  I have handed
23   you -- the court reporter has handed you
24   Exhibit 5, which is a statement entitled
25   Debit Advice from UBS in Hong Kong for
```

                    MICHAEL HORVITZ

1   Bravo Luck Limited, and it's
2   Bates-stamped Kwok 510, and it was
3   produced by your counsel to us in this
4   case, Mr. Kwok."
5           Do you see that, Mr. Horvitz?
6       A.  Yes.
7       Q.  I'm going to read from line
8   17.
9           Question, "Bravo Luck Limited
10  is a company owned by Zhang Wei?"
11          Answer, "Yes."
12          Question, "You have no
13  ownership interest in Bravo Luck
14  Limited?"
15          Answer, "I do not remember
16  having any."
17          Do you see that testimony?
18      A.  I do see it, yes.
19      Q.  What is your reaction, if any,
20  sitting here today, Mr. Horvitz, to
21  Mr. Kwok's testimony regarding Bravo
22  Luck?
23      A.  Well, my reaction is again
24  it's completely inconsistent with the

```
 1             MICHAEL HORVITZ
 2   representations that were made at the
 3   time, in 2015, at the time of the
 4   application.  And either those
 5   representations were inaccurate at the
 6   time or this testimony is inaccurate when
 7   it was given.  I have no view as to which
 8   it is, but they're completely
 9   inconsistent.
10        Q.    How does reading Mr. Kwok's
11   testimony from 2018 make you feel
12   regarding the representations he made in
13   2015?
14        A.    It doesn't really -- because I
15   don't know whether the representations in
16   2015 were true or not, it doesn't -- it
17   really in a funny way doesn't cast doubt
18   on the original representations, but it
19   tells me that one of two things happened.
20             Either he was misrepresenting
21   at the time or he's lying in this
22   deposition.  And it's theoretically
23   possible that the representation was true
24   and now he's lying and it's also possible
25   that the reverse is true.  I don't have a
```

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 579 RECEIVED NYSCEF: 09/25/2020
Case 1:20-cv-06555-MKV   Document 30-9   Filed 10/25/20   Page 11 of 14

76

```
 1                MICHAEL HORVITZ
 2   view on that.
 3            If I -- if I had known or if
 4   I -- if this testimony indicated to me
 5   that the representations in 2015 were
 6   inaccurate, I would consider, too, that
 7   we were defrauded.
 8        Q.   I don't have anything further
 9   at this time.  I reserve my right to ask
10   additional questions after Ms. Searles'
11   examination.
12            I don't know if you want to
13   take a break before Ms. Searles starts or
14   not.
15            MS. SEARLES:     Yeah, it
16       might make more sense just to take
17       a quick break so I can --
18            MR. MOSS:        Sure.
19            MS. SEARLES:     -- just make
20       sure to do it as quickly as
21       possible for you.
22            THE WITNESS:     No problem.
23            THE VIDEOGRAPHER: Off the
24       record.  The time is 9:56.
25              -  -  -  -  -
```

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM INDEX NO. 652077/2017
NYSCEF DOC. NO. 579 RECEIVED NYSCEF: 09/25/2020
Case 1:20-cv-06555-MKV   Document 30-9   Filed 10/25/20   Page 12 of 14

77

```
 1              MICHAEL HORVITZ
 2           (Recess taken.)
 3              - - - - -
 4           THE VIDEOGRAPHER: We're back
 5      on the record.  The time is now
 6      10:07.
 7     EXAMINATION OF MICHAEL HORVITZ
 8  BY MS. SEARLES:
 9      Q.   Good morning, Mr. Horvitz.
10           As I mentioned earlier, I'm
11  Jillian Searles, counsel for Mr. Kwok.  I
12  just have a few questions for you.
13           What, if anything, did you do
14  today to prepare for your deposition?
15      A.   Today?
16      Q.   Or what did you do to prepare
17  for your deposition today, if anything,
18  at any point before this day?
19      A.   Well, I reviewed the minutes
20  of the two meetings.  I reviewed the
21  application package.  I talked to my
22  counsel.  That's pretty much it.
23      Q.   Aside from your counsel, did
24  you speak to anyone at the board?
25      A.   No.
```

```
 1                MICHAEL HORVITZ
 2        Q.    Did you speak to Mr. Ullman?
 3        A.    No.
 4        Q.    You mentioned you reviewed a
 5   couple of documents, the board minutes?
 6        A.    The board minutes, the
 7   application package.  I also reviewed the
 8   correspondence from Ira Gilbert and Jerry
 9   Shulman regarding the financial
10   information.
11        Q.    Did you review any of the
12   legal pleadings in this particular
13   matter?
14        A.    I received them, but I didn't
15   read them.
16        Q.    From whom did you receive the
17   legal pleadings?
18        A.    My counsel.
19        Q.    I believe you mentioned
20   earlier you own an apartment at The
21   Sherry-Netherland?
22        A.    Yes.
23        Q.    You've owned that apartment
24   since 2004?
25        A.    No.  I went on the board in
```

FILED: NEW YORK COUNTY CLERK 09/25/2020 05:43 PM
NYSCEF DOC. NO. 579
Case 1:20-cv-06555-MKV   Document 30-9   Filed 10/25/20   Page 14 of 14
INDEX NO. 652077/2017
RECEIVED NYSCEF: 09/25/2020

79

```
 1                  MICHAEL HORVITZ
 2      2004.  I've owned -- I've owned the
 3      apartment since 1988.  And then I
 4      acquired -- there were a hotel room next
 5      to it and I acquired that some time
 6      later, I can't remember the year, and
 7      combined it with my apartment.  But I've
 8      been a shareholder since 1988.
 9           Q.   Okay.  Do you own that
10      apartment in your own name?
11           A.   I own it in the name of a
12      revocable trust that is my trust.
13           Q.   Is it common for individuals
14      living at The Sherry-Netherland to own
15      their apartments through other entities?
16           A.   I'd say it's --
17                MR. MOSS:      Objection to
18           the form.
19           A.   I don't know how prevalent it
20      is, but it's not -- it's not uncommon.
21           Q.   Earlier today you testified
22      that you were given various financial
23      information with respect to your review
24      of Mr. Kwok's application.
25                Other than reviewing, reading
```