# EXHIBIT L

## SUBSCRIPTION AGREEMENT

GTV Media Group, Inc.
162 E. 64TH Street
New York, NY 10065

Attn:   President

Dear Sir,

      This subscription agreement (the "Subscription Agreement") will evidence the agreement of the undersigned (the "Investor") to subscribe for and purchase shares of Common Stock, par value $0.001 (the "Common Stock") of GTV Media Group, Inc., a Delaware corporation (the "Company").  The Investor acknowledges receipt of a copy of the confidential information memorandum (hereinafter referred to as the "Company Materials"), relating to the offering of Common Stock by the Company.

      1.     Subscription.

      The Investor hereby tenders its subscription for the purchase of that number of shares of Common Stock of the Company as set forth on the signature page hereto, at a purchase price of **$1.00** per share for the total consideration set forth opposite Investor's name on the signature page hereto (the "Purchase Price"). The shares of Common Stock issued to Investor pursuant to this Subscription Agreement shall be referred to herein as the "Purchased Shares."

      The Company is offering a maximum of 200,000,000 shares of Common Stock in this offering. The Company will not accept any subscriptions until it has received subscriptions totaling at least $20,000,000.00.   As set forth in Section 5 below, no subscription shall be binding unless and until accepted by the Company, and the Company may accept or reject any subscription in its sole discretion, and may reject a subscription for any reason or no reason at all.

      2.     Representations and Warranties of Investor.

      The Investor understands that the Purchased Shares are being offered and sold under an exemption provided in the Securities Act of 1933, as amended (the "Securities Act").  In furtherance thereof, the Investor makes the following representations, warranties, covenants and agreements (which are complete and accurate as of the date set forth on the signature page hereof and will be complete and accurate as of the closing date applicable to the Investor) with the intent that the same may be relied upon by the Company in determining the suitability of the undersigned as a stockholder of the Company:

      (a)     The Company has made available to the Investor all documents and information that such Investor has requested relating to an investment in the Company.  The Company has afforded such Investor the opportunity to discuss an investment in the Company

100127-001/00236408-7

and to ask questions of representatives of the Company concerning the terms and conditions of the offering, and such representatives have provided answers to all such questions concerning the offering of the Common Stock. Such Investor has examined or has had the opportunity to examine before the date hereof all information that he, she or it deems to be material to an understanding of the Company, the proposed business of the Company, and the offering of the Common Stock and has consulted with his, her or its financial advisors, accountants, attorneys or such other representatives or consultants as he, she or it deemed appropriate with respect to an understanding of the Company, the proposed business of the Company and the offering of the Common Stock. He, she or it is aware that the Company is not subject to the informational requirements of the Securities Exchange Act of 1934, as amended, and, accordingly, does not file reports, proxy and information statements and other information with the Securities and Exchange Commission.

(b)      He, she or it is sufficiently experienced in financial and business matters to be capable of utilizing such information to evaluate the merits and risks of his, her or its investment and to make an informed decision relating thereto, or he, she or it has utilized the services of a purchaser representative and together he, she or it and the purchaser representative are sufficiently experienced in financial and business matters that they are capable of utilizing such information to evaluate the merits and risks of the Investor's investment and to make an informed decision relating thereto. The Investor is in a financial position to hold the Purchased Shares for an indefinite period of time and is able to bear the economic risk and withstand a complete loss of the Investor's investment in the Purchased Shares. The Investor has no need for liquidity with respect to his, her or its investment in the Purchased Shares and no present or foreseeable need to dispose of any portion of the Purchased Shares to satisfy any existing or contemplated undertaking or indebtedness. Such Investor has adequate means of providing for his, her or its current needs and possible contingencies. He, she or it has read the Risk Factors identified in the Company Materials and understands the risk involved with a subscription in the Common Stock.

(c)      The decision of the Investor to acquire the Purchased Shares has been made by such Investor independent of any other stockholders and independent of any statements, disclosures or judgments as to the properties, business, prospects or condition (financial or otherwise) of the Company which may have been made or given by any Investor or other person or entity. The Investor agrees and acknowledges that, no other investor or any person or entity has acted, is expected to act, or will act as the agent or representative of such Investor in connection with making, closing or monitoring of his, her or its investment hereunder. In considering his, her or its investment in the Company, such Investor has not relied upon any representations made by, or other information (whether oral or written) furnished by or on behalf of, the Company, or any officer, employee, agent or affiliate of such person or entity, other than as set forth in this Subscription Agreement.

(d)      Its investment in the Purchased Shares is independent of any other investment by such Investor, or its affiliate, in any other affiliate of the Company.

(e)      He, she or it is an "accredited investor" as such term is defined in Rule 501(a) promulgated under the Securities Act, because the undersigned meets at least one of the following criteria (please check the appropriate line):

_____(1)  A natural person whose net worth, either individually or jointly with such person's spouse, at the time of the undersigned's purchase of the Purchased Shares exceeds $1,000,000 (excluding the value of such person's primary residence);

_____(2)  A natural person who had an individual income in excess of $200,000, or joint income with that person's spouse in excess of $300,000, in 2018 and 2019  and reasonably expects to have income reaching the same level in 2020;

_____(3)  A bank as defined in Section 3(a)(1) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity;

_____(4)  A broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended;

_____(5)  An insurance company as defined in Section 2(13) of the Securities Act;

_____(6)  An investment company registered under the Investment Company Act of 1940, as amended (the "Investment Company Act"), or a business development company as defined in Section 2(a)(48) of the Investment Company Act;

_____(7)  A Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended;

_____(8)  A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has assets in excess of $5,000,000;

_____(9)  An employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment advisor, or if the employee benefit plan has total assets in excess of $5,000,000, or, if a self directed plan, with investment decisions made solely by persons who are accredited investors;

_____(10)  A private business development company as defined in Section 202(a)(22) of the Investment Advisors Act of 1940, as amended;

_____(11)  (a)  A corporation, partnership or limited liability company with total assets in excess of $5,000,000 or (b) an organization described in Section 501(c) of the Internal Revenue Code of 1986, as amended, or a Massachusetts or similar business trust with total assets in excess

of $5,000,000; provided, however, that this category (11) is not applicable to entities formed for the specific purpose of acquiring the Purchased Shares;

_____(12) A director or executive officer of the Company;

_____(13) A trust with total assets in excess of $5,000,000 not formed for the purpose of acquiring the Purchased Shares, whose purchase is directed by a sophisticated person who has such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of investing in the Company; and

_____(14) An entity in which all of the equity owners qualify under any of the above subparagraphs.

(f)     The Investor understands that the Purchased Shares are not being registered under the Securities Act on the ground that the issuance thereof is exempt from the registration requirements of Section 5 of the Securities Act because (i) the Investor and each other investor is an "accredited investor" as defined in Rule 501(a) promulgated under the Securities Act and (ii) the Investor and each other investor is making the representation provided in paragraph 2(f) hereof and, accordingly, such issuance is exempt under Section 4(a)(2) of the Securities Act and Regulation D thereunder as a transaction by an issuer not involving any public offering, and that reliance on such exemption is predicated in part on the Investor's representations and warranties and those of the other investors of the Company.

(g)     All of the Purchased Shares which he, she or it purchases shall be acquired by him, her or it for investment for his, her or its own account and not with a view to, or in connection with, any distribution thereof within the meaning of the Securities Act.

(h)     With respect to the legal aspects of its investment, the Investor relied solely upon the advice of his, her or its own tax and legal advisors.

(i)     The Investor understands that no state or federal government authority has made any finding or determination relating to the fairness for public investment of the Purchased Shares and that no state or federal governmental authority has recommended or endorsed, or will recommend or endorse, the Purchased Shares.

(j)     Neither the Investor, or if the Investor is an entity, the beneficial owners of such entity, (i) is listed on any Government Lists (as defined below), (ii) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224 (Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC (as defined below) or in any enabling legislation or other Presidential Executive Orders in respect thereof, (iii) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense (as defined below), or (iv) is currently under investigation by any governmental authority for alleged criminal activity in connection with any Patriot Act Offense. For purposes hereof, the term "Patriot Act Offense" means any violation of the criminal laws of the United States of America, or that would be a criminal violation if committed within the jurisdiction of

the United States of America, relating to terrorism or the laundering of monetary instruments, including any offense under (A) the criminal laws against terrorism; (B) the criminal laws against money laundering, (C) the Bank Secrecy Act, as amended, (D) the Money Laundering Control Act of 1986, as amended, or (E) the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001, as the same may be amended from time to time, and corresponding provisions of future laws. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "Government Lists" means (i) the Specially Designated Nationals and Blocked Persons Lists maintained by Office of Foreign Assets Control ("OFAC"), (ii) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that is now included in "Governmental Lists", or (iii) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other government authority or pursuant to any Executive Order of the President of the United States of America that is now included in "Governmental Lists".

(k) The Investor acknowledges that the Purchased Shares will be uncertificated, provided however that if at a later time the Company elects to certificate the Purchased Shares, a legend reading substantially as follows shall be placed on the Purchased Shares:

> THE SECURITIES REPRESENTED BY THIS STOCK CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE FEDERAL OR STATE SECURITIES LAWS. SUCH SECURITIES MAY NOT BE SOLD, ASSIGNED, PLEDGED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS OR EXEMPTION THEREFROM, AND COMPLIANCE WITH THE OTHER RESTRICTIONS ON TRANSFER SET FORTH HEREIN. IN ADDITION, SUCH SECURTIES ARE SUBJECT TO RESTRICTIONS ON TRANSFER SET FORTH IN THE STOCKHOLDERS AGREEMENT OF THE COMPANY.

(l) <u>Stockholders Agreement</u>. The Investor agrees to be bound by the terms and conditions of the Stockholders Agreement of the Company dated as of May ___, 2020 (the "Stockholders Agreement") with respect to the Purchased Shares, and shall duly execute and deliver a copy of the Stockholders Agreement together with its subscription for Purchased Shares hereunder. The Investor acknowledges that he, she or it has read and understands the Stockholders Agreement, and understands that the Stockholders Agreement contains restrictions on its ability to transfer the Purchased Shares.

(m) The Investor has the full power and authority to enter into this Subscription Agreement. This Subscription Agreement, when executed and delivered by the Investor, will constitute a valid and legally binding obligation of the Investor, enforceable in accordance with its terms and conditions, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance or other laws of general application relating to or affecting the enforcement of creditors' rights generally. There is no claim, action, suit, proceeding,

arbitration, complaint, charge or investigation pending or currently threatened against the Investor or any of its affiliates that questions the validity of this Subscription Agreement or the right of the Investor into this Subscription Agreement or to consummate the transactions contemplated hereby.

(n) Neither the Investor nor any of its officers, directors, employees, agents, stockholders or partners has either directly or indirectly, including through a broker or finder (i) engaged in any general solicitation with respect to the offer and sale of the shares of Common Stock, or (ii) published any advertisement in connection with the offer and sale of the shares of Common Stock.

(o)  If the Investor is not a United States person (as defined by Section 7701(a)(30) of the Internal Revenue Code of the United States), the Investor hereby represents that he, she or it has satisfied itself as to the full observance of the laws of its jurisdiction in connection with any invitation to subscribe for the Purchased Shares or any use of this Subscription Agreement, including (i) the legal requirements within its jurisdiction for the purchase of the Purchased Shares, (ii) any foreign exchange restrictions applicable to such purchase, (iii) any governmental or other consents that may need to be obtained, and (iv) the income tax and other tax consequences, if any, that may be relevant to the purchase, holding, redemption, sale, or transfer of the Purchased Shares. The Investor's subscription and payment for and continued beneficial ownership of the Purchased Shares will not violate any applicable securities or other laws of the Investor's jurisdiction.

(p)  He, she or it is not a member, nor is an agent of, the Chinese Communist Party ("CCP"). Investor recognizes that membership, agency, or collusion with the CCP will result in a forfeiture of any and all Purchased Shares.

If the Investor is purchasing any of the Purchased Shares subscribed for hereby in a representative or fiduciary capacity, the representations and warranties in this Subscription Agreement shall be deemed to have been made on behalf of the person or persons for whom the Investor is so purchasing.

3.     Additional Representations and Warranties of Investor.

If the Investor is a partnership, corporation, limited liability company or trust, the person executing this Subscription Agreement on its behalf represents and warrants that:

(a)     He or she has made due inquiry to determine the truthfulness of the representations and warranties made pursuant to this Subscription Agreement.

(b)     He or she is authorized to make this investment and to enter into and execute this Subscription Agreement on behalf of such entity.

4.      Representations and Warranties of the Company.

(a)      The Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and has all corporate power and corporate authority required (i) to carry on its business as presently conducted and as presently proposed to be conducted and (ii) to execute, deliver and perform its obligations under this Subscription Agreement.

(b)      The authorized capital of the Company consists, immediately prior to the issuance of Common Stock in this offering, of 4,000,000,000 shares of Common Stock, of which 1,800,000,000 are issued and outstanding as of immediately prior to the issuance of Common Stock in this offering, all of which are owned by Saraca Media Group, Inc. There are no outstanding preemptive rights, options, warrants, conversion privileges or rights (including rights of first refusal or similar rights), orally or in writing, to purchase or acquire any securities from the Company including, without limitation, any shares of Common Stock or any securities convertible into or exchangeable or exercisable for shares of Common Stock except for shares being offered in this offering of Common Stock.

(c)      All corporate action has been taken, or will be taken before the applicable closing, on the part of the board of directors and stockholders that is necessary for the authorization, execution and delivery of this Subscription Agreement by the Company and the performance by the Company of the obligations to be performed by the Company. This Subscription Agreement, when executed and delivered by the Company, will constitute the valid and legally binding obligation of the Company, enforceable against the Company in accordance with its terms and conditions except (a) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, or other laws of general application relating to or affecting the enforcement of creditors' rights generally, or (b) as limited by laws relating to the availability of specific performance, injunctive relief, or other equitable remedies.

(d)      The shares of Common Stock, when issued, sold and delivered in accordance with the terms and conditions and for the consideration set forth in this Subscription Agreement, will be duly authorized, validly issued, fully paid and nonassessable and free of restrictions on transfer other than restrictions on transfer under this Subscription Agreement, the Stockholders Agreement, applicable state and federal securities laws and liens or encumbrances created by or imposed by the Investor.

(e)      The Company is a newly formed entity, with no prior operations and no liabilities, except those incurred in connection with this offering of Common Stock, and otherwise related to the formation of the Company.

5.      Acceptance by the Company.

Upon acceptance of this Subscription Agreement by the Company, this Subscription Agreement is irrevocable. This Subscription Agreement is subject to all of the terms and provisions contained in the Company Materials. It may be accepted in whole or in part on behalf

of the Company by an officer executing this Subscription Agreement on behalf of the Company and delivering a duplicate copy to the Investor.  Any officer of the Company reserves the right in his or her complete discretion to reject this subscription in whole or in part.

      6.     <u>Indemnification</u>.

The Investor agrees to indemnify and hold harmless the Company, and each of its employees, directors, agents and attorneys, from and against any and all loss, liability, claims, damages and expense (including any expense reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) related to any  misrepresentation or breach of warranty or breach of agreement by the Investor contained herein or in any other documents furnished by the Investor to the Company in connection with this transaction.

      7.     <u>Agreement Binding on Investor's and Company's Successors</u>.

The representations, warranties, covenants and agreements in this Subscription Agreement shall be binding on the Investor's and Company's successors, assigns, heirs and legal representatives and shall inure to the benefit of the respective successor and assigns of the Company and Investor.

      8.     <u>Governing Law</u>.

This Subscription Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts to be performed fully therein, without giving effect to any principles of conflicts of law.  The parties hereto irrevocably consent to the exclusive jurisdiction and venue of the federal and state courts located in the State of New York, County of New York, with respect to any suit or proceeding arising out of this Subscription Agreement or the consummation of the transactions contemplated hereby; provided, however, that no party hereto waives its right to request the removal of such action or proceeding from the state court to a federal court in such jurisdiction.  The parties hereto each waive any claim that such jurisdiction is not a convenient forum for any such suit or proceeding and the defense of lack of personal jurisdiction.

      9.     <u>Amendments</u>.

This Subscription Agreement contains the entire agreement of the Investor with respect to the subject matter of this Subscription Agreement, and supersedes each course of conduct previously pursued or acquiesced in, and each oral agreement and representation previously made by the Investor with respect thereto, whether or not relied or acted upon.

      10.     <u>Counterparts</u>.

This Subscription Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any

electronic signature complying with the U.S. federal ESIGN Act of 2000, *e.g.*, www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

***signature page follows***

GTV Media Group, Inc.
(a Delaware corporation)

SUBSCRIPTION AGREEMENT
SIGNATURE PAGE

Total Shares of Common Stock Subscribed for: _500,000_
Price per share of Common Stock: $1.00
Total Purchase Price for shares subscribed: $ _500,000_

**Reference Name:**

Name(s) in which the Securities are being purchased:

___Ruizheng An_____
(Please Print)

___289 - 85 - 8939_____
(Social Security or Tax Identification Number(s) – if applicable)

Primary Address:                          Mailing Address: (if different from primary address)

7419 W Mercer Way

Mercer Island                            Number and Street

WA  98040                                City        State    Zip Code

Telephone Number: (  ) _206-334-1910_

Email address for notices: _ruizhengan@gmail.com_

**Additional Information for Individuals:**

In which state, if any, do you pay state income taxes? _____WA_____

In which state, if any, do you hold a driver's license? _____WA_____

**Additional Information for Corporation, Partnership, Trust, Limited Liability Company
or Other Entity:**

Form of organization: ____ Corporation    ____ Partnership    ____ Trust

                      ____ Limited Liability Company    ____ Other

State of organization: _____

**Individual Investor**

**Corporation, Partnership, Trust, Limited Liability Company or other Entity**

_____
SIGNATURE

_____
Print exact name of entity

_____
SIGNATURE

By: _____
          SIGNATURE

Date of Execution: As of _05/02/2020_

_____
Print Name and Title

Date of Execution: As of _____

**COMPANY'S ACCEPTANCE**

Accepted as of this __ day of May, 2020.

GTV Media Group, Inc., a Delaware corporation

By: _____
       Name:
       Title: