IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUIZHENG AN,<br><br>        Plaintiff,<br><br>v.<br><br>GTV Media Group Inc., a Delaware corporation, Saraca Media Group Inc., a Delaware corporation, Wengui Guo,<br><br>        Defendants. | No. 1:20-cv-06555-MKV<br><br>FIRST AMENDED COMPLAINT FOR<br><br>1. Violation of Sections 12(a)(1) of the Securities Act<br>2. Violation of Section 15(a) of the Securities Act<br>3. Violation of the Washington Securities Act |

## I. NATURE OF THE ACTION

1.   This suit seeks the return of $500,000, together with statutory interest and attorneys' fees, which Defendants procured from Ruizheng An ("An" or "Plaintiff") through the sale of unregistered securities in violation of the Securities Act of 1933 (the "Securities Act") and Washington Securities Act, Chapter 21.20 RCW (the "Washington Act") (collectively the "Acts").

2.   Both Acts forbid the sale of unregistered securities and allow purchasers of unregistered securities to assert joint and several liability against anyone whose acts were substantial contributing factors in the sales transaction.

3.   The Securities Act requires the seller and any controlling persons to return the purchase price of the unregistered securities plus any interest.

4. The Washington Act requires the seller and those who substantially contribute to the sale to return the purchase price of unregistered securities plus statutory interest from the date of sale, together with reasonable attorneys' fees.

5. Defendant Guo caused the establishment of GTV Media Group Inc. ("GTV") on April 17, 2020. Even prior to establishing GTV, Guo began to generally solicit investors to invest in GTV by purchasing the company's stock (the "GTV Offering").

6. After being solicited by Wengui Guo, Mr. An signed a Subscription Agreement on May 2, 2020 and wired 500,000 USD to Saraca Media Group Inc. ("SMG", and, collectively with GTV, the Corporate Defendants), the designated recipient of investment funds, on May 12, 2020.

7. The securities were neither registered as required under both Acts, nor subject to any exemption from registration.

8. GTV as seller, and the remaining defendants, as persons who substantially participated in and contributed to the GTV Offering, violated the Securities Act and the Washington Act through their sale of unregistered securities.

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331 because the Plaintiff asserts claims under the Securities Act of 1933.

10. This Court has personal jurisdiction over the Corporate Defendants because the corporate entities reside in this state by virtue of each maintaining its principal place of business in this state.

11. This Court has personal jurisdiction over Defendant Guo because he resides in this state.

12. This Court has personal jurisdiction over all defendants because, as described in greater detail below, each defendant purposely availed themselves of the privilege of conducting business activities within this state, thus invoking the benefits and protections of the laws of New York.

13. This Court has personal jurisdiction over all defendants because, as described in greater detail below, each defendant committed activities in violation of the Acts in this state and judicial district.

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because the Corporate Defendants maintain operations and principal places of businesses in this state and judicial district. Furthermore, the Defendant Guo resides in this state and judicial district.

### III. PARTIES

15. Plaintiff Ruizheng An, a foreign national residing in Washington, invested $500,000 by wiring this sum to SMG's receiving account designated by Guo and GTV on May 12, 2020.

16. Upon information and belief, Defendant GTV is a Delaware Limited Liability Company with its principal place of business in New York.

17. Upon information and belief, Defendant SMG is a Delaware corporation with a principal place of business in New York.

18. Upon information and belief, SMG is the parent company of GTV. SMG owns and operates the online media outlet "GNews" and a company called "Guo Media." SMG also owns several trademarks that feature Guo's various names, including "Guo Wengui" and "Miles Guo".

19. Upon information and belief, Defendant Wengui Guo ("Guo") is and at all time mentioned herein a foreign national residing in the State of New York.

20. Upon information and belief, Defendant Guo holds, controls, or is otherwise entitled to a large beneficial interest in SMG and GTV.

21. For example, Guo's close associate, right-hand woman, and sometime-translator Yanping Wang is listed as SMG's CEO in New York corporation filings. In addition, Guo's long-time personal servant Chunguang Han was listed as its President and a member of its board in a March 2019 Delaware tax-filing. The "G" in GTV and GNews stands for "Guo."

## IV.  FACTS

22. GTV is the brainchild of Defendant Guo, a self-described political dissident from China with a large number of social media followers in the U.S.

23. Guo conceived GTV to be a Tik-Tok like video streaming social-media platform for user-generated political content.

22. On May 6, 2019, SMG entered into a "Software Development Agreement" with Mr. An's company, WA&HF in which WA&HF agreed to develop the GTV video broadcast platform and its website (the "GTV Platform").

23. Over the course of 2019 and early 2020, WA&HF performed under the contract and designed and built the GTV Platform.

24. In early March 2020, WA&HF delivered an initial release of the GTV Platform.

25. Defendant SMG and Guo accepted the delivery.

26. Satisfied with the initial product, Guo began broadly soliciting investors for GTV through YouTube, the GTV Platform itself, GNews – a website connected to GTV that is under Guo's control, as well as other public social media platforms.

27. On April 7, 2020, Guo boasted in a livestream broadcast online to the public, that there were so many people who want to invest in GTV that "one or two or three billion dollars could be raised in one minute."

28. On April 9, 2020, Guo posted a video to YouTube, which has since been removed by YouTube for violating its community guidelines, in which he touted GTV as an investment.

29. On April 15, 2020, WA&HF officially launched the GTV App on the app store. It was immediately well received by users.

30. On the same day, Guo claimed in a post published on the GTV Platform that the GTV App ranked higher than WeChat, one of China's most popular social media apps with over a billion users, on the Apple app store.

31. On April 17, 2020, Guo incorporated GTV in Delaware.

32. On April 20, 2020, Guo recorded a video giving instructions to potential investors on how to invest in GTV.

33. In the video, Guo identified several individuals who would purportedly be directors of the company.

34. Guo also claimed the video was limited to private investors and not the public. However, this video was uploaded to YouTube by Guo the next day, with no restrictions on who may view it.

35. As shown below, in the last few minutes of the video, investors were instructed to scan and send all signed documents to Guo.

> For the absolute security of investors' information, we did not use any email for the private placement project of GTV. Please do not send any email, just to Mr. Guo Wengui's WhatsApp number or iMessager with the same number.

36. As shown below, the YouTube video also instructed investors to only trust and communicate with Mr. Guo concerning their investors in GTV.

> Please do not believe any information forwarded or sent to you indirectly by anyone. All information shall be based on the contact between Mr. Guo Wengui and Please send all inquiries to Mr. Guo Wengui's WhatsApp number:
> + 1 (347) 439 5584

37. The YouTube video has been viewed over 2500 times since it was posted.

38. Along with the video, Guo posted a link to download investment documents, including a subscription agreement, NDA, a set of "Investment Procedure Guidelines" with instructions on how to invest, and other investment related documents.

39. The "how-to" instructions for making the GTV investment was signed "Miles Guo".

40. The investment documents described Guo as GTV's "sponsor" and "consultant", as well as the "main host" on GTV.

41. In addition, the documents stated that while GTV aimed to sell a 10% stake in the company for as much as $200 million. SMG would hold the remaining 90% of GTV's stock.

42. On May 11, 2020, Guo touted in a live streamed speech that GTV is "the only safe choice" for investors and its value could increase by a "thousand, ten thousand, or a hundred thousand times," or "even a million times." In the same video, Guo promised that the investors' money would be "safe" in his hands.

43. In sum, Guo made and publicized on multiple social media platforms numerous video presentations touting the GTV investment and soliciting investments.

44. Guo also touted a form of cryptocurrency that would be associated with GTV: "G-Coin", which investors would purportedly receive and which, according to Guo, would be highly valuable.

45. For example, in an April 27, 2020 video, Guo claimed that G-Coins have already accrued massive value, and that it would be circulated around the world and enjoy the same status as a sovereign currency.

46. After being solicited by Guo, on May 2, 2020, Plaintiff signed a Subscription Agreement to invest in GTV.

47. On May 12, 2020, Guo confirmed Plaintiff's investment via a voice message and asked Plaintiff to make a wire transfer. Guo promised the investment will generate returns and stated that if Plaintiff loses money on the investment, Guo will make him whole.

48. On May 12, 2020, Plaintiff wired funds to SMG, the designated recipient of investment funds for investments in GTV.

49. GTV never returned an executed copy of the Subscription Agreement, nor did it ever deliver any GTV securities to Mr. An.

50. On May 13, 2020, GNews, a website connected to GTV that is under Guo's control, published an article encouraging readers to invest in GTV. The article stated in Chinese: "The current financing stage of GTV is the earliest stage and the stage with the highest return. The investment risk corresponding to this stage is of course the largest theoretically, but the GTV fundraise is actually a risk-free act of gifting money [to investors]."

51. The last line of the article, in bold, stated in Chinese: "Mr. Wengui [Guo] let his comrades invest in GTV and buy G coins, which is a reward for the sacrifices and contributions made by all the comrades who broke the news of the revolution. There is no business risk, you just have to believe in it."

52. A number of GTV investors were motivated to invest out of their trust in, and indeed, worship of Guo. In an interview conducted by the Washington Post and published on September 13, 2020, an investor described Guo as "descended from heaven".

53. On June 2, 2020, Guo announced in a publicly posted video that the "private placement" had ended with him successfully raising hundreds of millions. He claimed that GTV is currently valued at *$2 billion*.

54. However, despite claiming that the private placement was over, throughout May and July 2020, Guo continued to solicit investments, including through at least one more YouTube video and an article on his GNews website.

55. Separately, smaller investors were told that they could invest in the GTV Offering through another entity called Voice of Guo Media Inc. ("VOG"). In a June 2, 2020 livestream, Guo claimed that VOG has raised over 117 million dollars for the GTV Offering.

56. The GTV Offering was not registered pursuant to any law nor subject to any exemption from registration.

57. The securities sold in the GTV Offering were neither registered as required under the Acts, nor subject to any exemption from registration.

58. Typically, private placement securities issuers file Form D filings with the SEC claiming that their private placement sale was exempt from registration because it would comply with the restrictions in 17 C.F.R. § 203.506 ("Rule 506").

59. Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in violation of the restrictions set forth under Rule 506.

60. An issuer may rely on the Rule 506(b) safe harbor under the Securities Act and/or Section 4(a)(2) only if it does not use general solicitation.

61. As the foregoing discussion illustrates, Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the GTV Offering through a general solicitation.

62. Accordingly, Defendants were not entitled to rely on Rule 506(b).

63. That leaves Defendants with Rule 506(c) as the only potential exemption they may invoke.

64. Issuers who wish to rely the Rule 506(c) exemption may engage in general solicitation "provided that the sales are limited to accredited investors and an issuer takes reasonable steps to verify that all purchasers of the securities are accredited investors."

65. Defendants did not take any steps to verify that purchasers of GTV securities were accredited investors.

66. In one cogent illustration of this violation of Rule 506(c), Defendants' "investment procedure guidelines", which were published along with Guo's April 20, 2020 YouTube video, stated, "6. concerning whether investors qualify as 'qualified investors', investors are requested to make their own judgments, do not send information or inquires to us. We cannot make any judgments."

67. In short, Defendants' offering of GTV securities was not exempt from registration.

## V. CAUSES OF ACTION

### Count I: Violation Of Sections 5 And 12(A)(1) Of The Securities Act
### (Against All Defendants)

68. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

69. This Count is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e and 77l(a)(1), against all Defendants.

70. The interests in GTV marketed by Defendants are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

71. Defendants, and each of them, promoted, offered and/or sold securities through the GTV offering.

72. Defendants, and each of them, are issuers, underwriters, and/or necessary participants of/in the GTV offering.

73. No Defendant or other person filed with the SEC a registration statement for the offer and sale of GTV securities through the GTV offering, no registration statement was in effect at the time of the GTV offering, and no exemption to the registration requirement was available.

74. Defendants, and each of them, used the instrumentalities of interstate commerce in connection with the offer and sale of GTV securities.

### Count II: Violation Of Section 15 Of The Securities Act
### (Against Defendant Guo)

75. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

76. This Count is asserted against Defendant Guo (the "Control Person Defendant") under Section 15 of the Securities Act, 15 U.S.C. § 77o.

77. The Control Person Defendant, by virtue of his offices, stock ownership, agency, agreements or understandings, and specific acts was, at the time of the wrongs alleged herein, and as set forth herein, a controlling person within the meaning of Section 15 of the Securities Act. The Control Person Defendant had the power and influence and exercised the same to cause the

unlawful offer and sale of GTV securities as described herein.

78. The Control Person Defendant possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of SMG and GTV, through the ownership of voting securities, by contract, subscription agreement, or otherwise.

79. The Control Person Defendant has sufficient influence to have caused SMG and GTV to submit a registration statement.

80. The Control Person Defendant participated in, and/or aided and abetted, SMG and GTV's failure to register the GTV offering.

81. By virtue of the conduct alleged herein, the Control Person Defendant is liable for the wrongful conduct complained of herein and is liable to Plaintiff for rescission and/or damages suffered.

### Count III: Violation Of Washington Securities Act
### (Against All Defendants)

82. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

83. This Count is brought pursuant to the Washington Securities Act, RCW 21.20.430 against all defendants.

84. Defendants sold unregistered securities to Washington resident.

85. Defendants sold unregistered securities, directly or indirectly controlled the seller of unregistered securities, were a partner, officer, director or person who occupies a similar status or performs a similar function of such seller of unregistered securities, or were the employee of such a seller of unregistered securities who materially aided in the sale.

### VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A. Declaring that Defendants offered and sold unregistered securities in violation of the Washington Securities Act and the Securities Act of 1933;

      B.      Awarding Plaintiff the remedy of recovery of the consideration paid for the securities, together with applicable statutory interest from the date of payment, costs, and reasonable attorneys' fees, against all Defendants, jointly and severally; and

      C.      Such other and further relief as this Court may deem just and proper.

## VII.  JURY DEMAND

Plaintiff hereby demands a trial by jury.

November 1, 2020

AFN Law PLLC

By: _____
Angus F. Ni
41 Madison Ave, 31st Floor,
New York, NY 10010 Phone:
(646) 453-7294

*Attorneys for Plaintiff*